## Commonwealth v. Hamborsky

*Nancy Duffield Vernon, district attorney,* for Commonwealth.

506

*Samuel J. Davis,* for defendant.

LESKINEN, *J.,* September 28, 2005—Before the court is the Commonwealth's petition for bond revocation. The Commonwealth did not present evidence at either of two bond hearings that establishes that the "proof is evident or presumption great" that the defendant will be convicted of murder in the first or second degree. Under Article I, Section 14 of the Pennsylvania Constitution, therefore, the request to revoke bail must be denied. Because the precise meaning of Article I, Section 14 has never been made clear under the circumstances presented here, and because the parties in this case vehemently disagree on that meaning, this opinion follows.

Catherine Hamborsky is charged with arson, abuse of a corpse and criminal homicide. The victim was Thomas Lesniak, whose body was found in the burned-out and still smoldering remains of the small "hometown" tavern in Everson where he had worked. Based on a thorough investigation, the state police concluded that Hamborsky was involved in the death and the fire, and filed the instant charges. The district justice originally set no bond.

After the preliminary hearing Hamborsky filed a petition for bond with this court. The first bond hearing was held on March 8, 2005. At that hearing, the Commonwealth presented no testimony, while the defendant testified on her own behalf. The attorney for the Commonwealth stipulated on the record that the court was required to set reasonable bail under Article I, Section 14 of the Pennsylvania Constitution because it was not likely that the defendant would be convicted of an of-

fense for which the maximum sentence is life imprisonment. Upon this court's request, a transcript of the preliminary hearing was provided by the defense and received in evidence.

Based on the Commonwealth's stipulation, this court granted bail in a bond order entered March 10, 2005. Without any request from the Commonwealth, however, but because of the severity of the charges, this court deferred setting the conditions of bail and ordered the Pretrial Services Division of the Fayette County Adult Probation Office to conduct a home assessment to determine if the defendant could effectively be supervised while on bail using home confinement with electronic monitoring. On March 22, 2005, this court set bail at $50,000 with an additional special condition that she remain in home confinement with electronic monitoring.

The very next day, on March 23, 2005, the prosecution filed a petition for bond revocation. The petition was filed based on the claim that at the bond hearing held on March 8, 2005 "[a]n assistant district attorney relied upon the assertions of defense counsel that the defendant was unlikely to be convicted of first-degree murder. This statement was in error."

At the first bond hearing, defense counsel stated that "I know that District Attorney Nancy Vernon, in my discussions with her and as an officer of the court I am making this representation to you, judge, that she did indicate that she thought that bail was appropriate in this case." This statement was corroborated by a notation the district attorney made on the Commonwealth's copy of the defendant's motion for bond: "ask for $200,000."

Asking that bail be set at $200,000 constitutes an obvious concession that the offense is bailable. In the petition for bond revocation, the Commonwealth repeated the request "that bail, if granted, be in the amount of not less than $200,000 straight cash with all other conditions of record."

Rule 529 of the Pennsylvania Rules of Criminal Procedure, entitled Modification of bail order prior to verdict, reads in pertinent part:

"(C) Once bail has been set or modified by a judge of the court of common pleas, it shall not thereafter be modified except

"(1) by a judge of a court of superior jurisdiction, or

"(2) by the same judge or by another judge of the court of common pleas either at trial or after notice to the parties and a hearing."

Rule 529 contains no explicit requirement that there be a change in circumstances to justify modification of bail, although this is the first time the undersigned has ever seen a request to modify bail *without* a change of circumstances.

The Commonwealth argues that Article I, Section 14 of the Pennsylvania Constitution *automatically* excludes persons charged with first- or second-degree murder from bail, and that it was error to grant bail at all. It would have been better, obviously, if this argument had been presented at the hearing on March 8, 2005, or if the Commonwealth had addressed this alleged "error" between March 10 (when bail was granted), and March 22 (when the conditions of bail were set).

A second bail hearing was held on April 29, 2005, with the Commonwealth's only competent evidence

being testimony that the deceased was reputed to be a peaceful, law-abiding person. Both parties submitted authority on May 13, 2005, each arguing for a different interpretation of Article I, Section 14 of the Pennsylvania Constitution.

The evidence presented to the court reveals that Hamborsky and her husband first went to the tavern where the decedent, Lesniak, tended bar on January 3, 2005. They subsequently went home and Mr. Hamborsky went to bed. Mrs. Hamborsky then returned to the tavern in the early morning hours of January 4, 2005. After the only other remaining patron left the tavern, a problem arose between Hamborsky and Lesniak.

After giving two statements to the police wherein she denied any knowledge of the facts surrounding the death of Lesniak, Hamborsky was confronted with: (1) a witness statement identifying her as the last person seen with Lesniak alive, and (2) evidence that the gas can left at the scene of the arson was hers. As a result, on January 6, 2005, she gave police a tape-recorded statement in which she admitted stabbing and shooting the decedent, but claimed self-defense. Hamborsky said that Lesniak first attempted to procure "sexual favors" from her in exchange for a $58 "tab" she and her husband had accrued; and that when she refused, Lesniak attempted to rape her. She said she was forced onto her back on the floor, and Lesniak was crawling up the front of her body, when she took *his* knife and stabbed him, and then took *his* gun and shot him. Lesniak was a very large man, while Hamborsky is a smaller than average woman. Hamborsky had bruises on her buttocks and cuts on her hands, and the injury locations on the deceased were consis-

tent with her claim of self-defense. Moreover, the complete incineration of Lesniak's clothing despite the floor under his body being undamaged by fire is consistent with her claim that he dropped his pants before or during the altercation. The limited portions of the autopsy report presented to this court indicate that Lesniak was shot five times, but those wounds were not listed as the direct cause of death, which was instead "hypertrophic cardiomyopathy." After the altercation, Hamborsky threw Lesniak's gun into nearby Jacob's Creek, got the gas can, returned to the tavern, doused it with gasoline and burned it. She was arrested shortly after making the recorded statement.

Article I, Section 14 of the Pennsylvania Constitution is entitled "Prisoners to be bailable; habeas corpus." In pertinent part, the section provides that:

"All prisoners shall be bailable by sufficient sureties, *unless for* capital offenses or for *offenses for which the maximum sentence is life imprisonment* or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community *when the proof is evident or presumption great* . . . ." Pennsylvania Constitution Article I, Section 14. (emphasis added) This section was made applicable "for offenses for which the maximum sentence is life imprisonment . . . ." by a constitutional amendment approved on November 3, 1998.

In support of its argument that this provision *automatically* excludes bail for Hamborsky, the Commonwealth submitted a one-page order of the Pennsylvania Superior Court in *Commonwealth v. Munchinski,* no.

1731 WDA 2004. The Commonwealth's reliance on this order, however, is inappropriate. In the instant case, the defendant, who is presumed innocent as she has not been proven guilty, is requesting pretrial bail. In contrast, Munchinski had already been convicted and was requesting bail pending his appeal. When considering whether to grant Munchinski's request for bail, the Pennsylvania Superior Court noted that Munchinski "still had to be considered to be convicted of his crimes" because the appeal automatically gave rise to a supersedeas in the Commonwealth's favor. *Commonwealth v. Munchinski,* no. 1731 WDA 2004. As such, the Superior Court found that Munchinski was not bailable under Article I, Section 14. Because of this very significant distinction, *Munchinski* does not support the Commonwealth's argument.

The defendant argues that the Commonwealth's interpretation of Article I, Section 14 would violate the Eighth Amendment to the United States Constitution ("Excessive bail shall not be required . . . ."), which is applicable to the Commonwealth pursuant to the Fourteenth Amendment. Therefore, this court must decide whether *automatic* denial of bail based *solely* on the potential penalty is a violation of the Eighth Amendment. Neither party has presented direct precedent on this issue.

Several federal circuit courts have addressed related issues. In *United States ex rel. Covington v. Coparo, infra,* the defendant was held without bail upon an indictment returned by a New York county grand jury charging him with a triple murder in the first degree. The defendant argued that he had an absolute right to

bail under the Eighth Amendment. The Second Circuit found that:

" 'The state legislature may define types of crimes so that bail is not mandatory in all cases, leaving the determination of whether an accused is a good bail risk for courts to decide in the exercise of their sound discretion.' *People ex rel. Shapiro v. Keeper of City Prison,* 290 N.Y. 393, 49 N.E.2d 498 (1943)." *United States ex rel. Covington v. Coparo,* 297 F. Supp. 203, 206 (D.N.Y. 1969).

The court noted that: "the basic purpose of bail remains whether, in the light of the nature of the charge and other significant factors, an accused will appear for trial and submit to sentence upon conviction." 297 F. Supp. 203, 206 (D.N.Y. 1969) citing *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1 (1951).

As did the *Covington* court, several federal circuit courts have held that "the Eighth and Fourteenth Amendments do not require that a state grant bail in all cases as a matter of right . . . a state constitution may constitutionally provide that bail is granted in some cases as a matter of right and denied in others, provided that the power is exercised rationally, reasonably and without discrimination." 297 F. Supp. 203, 206 (D.N.Y. 1969) citing the following cases: *Mastrian v. Hedman,* 326 F.2d 708, 710-11 (8th Cir.), *cert. denied,* 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); *United States ex rel. Hyde v. McMann,* 263 F.2d 940, 943 (2d Cir.), *cert. denied, United States ex rel. Hyde v. LaVallee,* 360 U.S. 937, 79 S.Ct. 1462, 3 L.Ed.2d 1549 (1959); *United States ex rel. Fink v. Heyd,* 287 F. Supp. 716, 717-18 (E.D. La. 1968);

*Wansley v. Wilkerson,* 263 F. Supp. 54, 57 (W.D. Va. 1967). Cf. *People ex rel. Shapiro v. Keeper of City Prison,* 290 N.Y. 393, 398, 49 N.E.2d 498 (1943). See also, *Bitter v. United States,* 389 U.S. 15, 16, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967); *Rehman v. California,* 85 S.Ct. 8, 13 L.Ed.2d 17, 18-19 (1964) (Douglas, Cir. J.); *Carbo v. United States,* 82 S.Ct. 662, 7 L.Ed.2d 769, 774 (1962) (Douglas, Cir. J.); *Fernandez v. United States,* 81 S.Ct. 642, 5 L.Ed.2d 683, 686 (1961) (Harlan, Cir. J.).

While these cases clearly hold that bail is not mandated in every case, they also hold that the power to deny bail must be "exercised rationally, reasonably, and without discrimination." Pretrial punishment is not permissible. The purpose of bail is to assure the defendant's appearance at trial. The possible penalty is certainly relevant, but it is only one of many significant factors bearing on that. Automatic denial of bail based *solely* on the possible penalty would be irrational, unreasonable, and discriminatory.

Pa.R.C.P. 523 is consistent with the Eighth Amendment, and summarizes the significant factors:

"(A) To determine whether to release a defendant, and what conditions, if any, to impose, the bail authority shall consider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond, including information about:

"(1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and *possible penalty;*

"(2) the defendant's employment status and history, and financial condition;

"(3) the nature of the defendant's family relationships;

"(4) the length and nature of the defendant's residence in the community, and any past residences;

"(5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;

"(6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;

"(7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;

"(8) the defendant's prior criminal record;

"(9) any use of false identification; and

"(10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

"(B) The decision of a defendant not to admit culpability or not to assist in an investigation shall not be a reason to impose additional or more restrictive conditions of bail on the defendant." (emphasis supplied)

Notably, the "possible penalty" is only one of the many factors enumerated.

Article I, Section 14 of the Pennsylvania Constitution states certain specific situations that justify complete denial of bail. Of course, if a state's constitutional provision conflicts with the United States Constitution, the state's provision must yield. But if it is possible to construe Article I, Section 14 in a way that is consistent with the Eighth Amendment, such a construction must

be adopted. Clearly, when the "proof is evident and the presumption great" that a defendant will be convicted of a crime with mandatory life imprisonment as the penalty, the chances are higher that the defendant will try to flee. In such cases, Article I, Section 14 acknowledges the fact that there is no amount of money that would reasonably ensure such a defendant's presence at trial, and provides that bail must be refused. However, that refusal is not "excessive bail" in violation of the Eighth Amendment because the refusal is not *automatic;* but depends on the finding that the "proof is evident or presumption great" that the defendant will be sentenced to life imprisonment, and thus has a strong motive to flee.

Long ago, the Supreme Court of Pennsylvania held that "when the proof is evident or presumption great," meant "that if the Commonwealth's evidence which is presented at the bail hearing, together with all reasonable inferences therefrom, is sufficient in law to sustain a verdict of murder in the first degree, bail should be refused." *Commonwealth ex rel. Alberti v. Boyle,* 412 Pa. 398, 400-401, 195 A.2d 97 (1963). (citations omitted) (footnote omitted) Unfortunately, that statement is dicta relative to the circumstances presented here, and can be misread to reduce the requirement that "the proof is evident or the presumption great" to just a prima facie case. (The test of a prima facie case and the test of sufficiency of the evidence to sustain a jury's verdict are currently identical.) Under such a reading, the common pleas court would have no decision at all to make on bail. If a defendant was charged with first- or second-degree murder, and the district justice found sufficient evidence to bind the case for trial, bail would automatically be prohibited. Such an interpretation

makes much of Article I, Section 14 mere surplusage. (See the learned opinion of the Honorable Judge William J. Ober in *Commonwealth v. Long*, no. 4201 C 1999 (Westmoreland C.C.P. 2002); and the learned opinion of the Honorable President Judge Daniel L. Howsare in *Commonwealth v. Ebersole*, 106 C 2003 (Bedford C.C.P. 2003).)[1]

A close reading of *Alberti* reveals, however, that the Supreme Court specifically made bail depend upon: "evidence which is presented *at the bail hearing* . . . ."

---

1. This court has considered the footnote in *Commonwealth v. Ebersole*, 106 C 2003 (Bedford Cty. C.C.P. 2003) which states: "In determining that this is the appropriate standard we agree with the opinion of Judge Ober of the Westmoreland County Court of Common Pleas in *Commonwealth v. Long*, no. 4201 C 1999 (Westmoreland Cty. C.C.P. 2002). Like Judge Ober, we also recognize that, in *Commonwealth v. Heiser*, 330 Pa. Super. 70, 478 A.2d 1355, 1356 (1984), the Superior Court states that the Commonwealth "can satisfy its burden to prove that a defendant is not entitled to bail by establishing a prima facie case of murder in the first degree." (footnote omitted) However, like Judge Ober, we find that this is not an accurate or controlling statement of law in determining whether an offense is bailable.

The prima facie standard is lower than the one announced by the Supreme Court in *Alberti*. And as Judge Ober noted "to support its conclusion that the Commonwealth merely needed to present a prima facie case, the *Heiser* court cited to *Commonwealth v. Farris*, 443 Pa. 251, 278 A.2d 906 (1971). *Farris*, however, is a case where the Supreme Court, without any analysis or a discussion of *Alberti*, made the statement that bail was properly denied because a prima facie case of murder was presented at a delinquency hearing. This court does not believe the Supreme Court's use of the words 'prima facie' in *Farris* was intended to set forth a new test or to establish a lower level of proof other than required by *Alberti*." Furthermore, the prima facie standard is what is used in determining a habeas corpus petition. We believe it would be improper to use the prima facie standard in the bail issue because doing so would essentially be a ruling on a habeas corpus before such petition has even been filed."

A separate bail hearing is necessary because potential defenses are not considered at a preliminary hearing. Preliminary hearings address the mere *sufficiency* of the Commonwealth's evidence, while the Eighth Amendment to the United States Constitution requires that bail be based on the *likelihood* of conviction, and how that bears on the likelihood of flight. As a result, potential defenses must be considered at a bail hearing.

As an extreme example, a defendant could be charged with first-degree murder because he shot an armed robber who was threatening to kill him. Because the use of a deadly weapon sufficiently establishes the specific intent to kill required for first-degree murder, there would be *sufficient* prima facie evidence to hold the charge for trial even if the proverbial "busload of bishops" stood ready to testify that it was justifiable self-defense. Despite *sufficient* evidence to convict, however, the *likelihood* of conviction would be so low that flight would not be a serious risk. Few would argue that such a defendant should be required to await trial in jail. Article I, Section 14 does not mandate automatic denial of bond in such circumstances. As a result, the Supreme Court's test requires evaluation of all of the evidence "presented at the bail hearing . . . ."

The Commonwealth's own evidence sets forth that Hamborsky stabbed and shot the victim because she did not want to get raped or killed. Once self-defense has been raised, the Commonwealth must prove beyond a reasonable doubt that the defendant was *not* acting in justifiable self-defense. Disproving self-defense becomes an additional element of the offense.

" 'Self-defense, if justifiable, is a complete defense to the charge. The Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in justifiable self-defense.' (Pa. SSJI (Crim) vol. I, §9.505.) (See also, *Commonwealth v. Samuel,* 527 Pa. 298, 303, 590 A.2d 1245, 1247 (1991); *Commonwealth v. Upsher,* 497 Pa. 621, 624, 444 A.2d 90, 91 (1982); and *Commonwealth v. Torres,* 564 Pa. 219, 766 A.2d 342 (2001).)

"Because the Commonwealth has the burden of disproving the defense of justification, you may find the defendant guilty only if you are satisfied beyond a reasonable doubt that (s)he did not reasonably believe that the use of deadly force was then and there necessary to protect herself against (death) (serious bodily injury) (kidnapping) (sexual intercourse compelled by force or threat). In other words, if you are satisfied beyond a reasonable doubt that the defendant was not reasonable in her belief that the use of deadly force was then and there necessary to protect herself from the danger of (death) (serious bodily injury) (kidnapping) (sexual intercourse compelled by force or threat), then you may find the defendant guilty. (Pa. SSJI (Crim) vol. I, §9.505E.)"

Here, there is no direct evidence that the defendant was *not* acting in self-defense. The circumstantial evidence of record includes only Lesniak's reputation for being peaceful and law-abiding and Hamborsky's conduct that arguably shows "consciousness of guilt."

Hamborsky claims she threw away the gun, burned the bar and concealed the truth from the police because she panicked and because she wanted to "cover every-

thing up," even though she was acting in justifiable self-defense. Given the opposing arguments concerning this evidence, the court must evaluate the other evidence "presented at the bail hearing" to evaluate the *likelihood* the Commonwealth will successfully disprove justifiable self-defense at trial.

Hamborsky stated that she did not bring the gun to the tavern. At the time of the preliminary hearing, the Pennsylvania State Police Gun Record Sales System indicated that there were three guns registered to Lesniak, including a Smith & Wesson .38 caliber; a .22 caliber HRTM and a .40 caliber SR. Up to this point, there is no evidence that Hamborsky is lying about the gun she used being owned by Lesniak.

Hamborsky said that she was on her back on the bar floor and that Lesniak was trying to crawl up on top of her body. At the preliminary hearing, the trooper testified that the autopsy report and the location of the bullet wounds are consistent with her statement.

Hamborsky said that when she shot Lesniak he had his pants partially down. Lesniak's clothes were completely burned off. The fire marshall testified that Lesniak's body had not been moved prior to his arrival on the scene, because the floor area underneath the body had not been damaged by fire. The front part of pants that were up would not be completely burned off. This corroborates Hamborsky's statement that Lesniak's pants were down. In turn, this is consistent with her claim of attempted rape justifying self-defense.

As noted above, Hamborsky said that during the struggle she fell to the floor and that Lesniak was on top of her. On January 6, 2005, just two days after the

incident occurred, there was bruising around the defendant's buttocks and lower back area that a female trooper photographed. Likewise, Hamborsky said that she took a knife from Lesniak. On January 6, 2005, the defendant had cuts on her fingers, and pictures were also taken of them. This evidence could also corroborate her claims of self-defense.

The uncontradicted evidence "presented at the bail hearing" is that the relatively diminutive Mrs. Hamborsky was in a physical struggle with a 300- to 350-pound man armed with a gun and a knife. The Commonwealth may have other evidence it is saving for trial, but no court can base a decision on speculation about evidence that was not presented.

Based on the evidence "presented at the bail hearing," the Commonwealth has not shown that the "proof is evident or presumption great" that Hamborsky did not act in self-defense. Accordingly, the defendant is bailable under Article I, Section 14 of the Pennsylvania Constitution.

That said, this court must now determine whether the Commonwealth has proved that the amount or conditions of bail should be modified. This defendant's family has posted a significant amount of bail, and it appears that her parents, her husband, and her two minor children will lose their home if she fails to appear for trial. She is a long-term resident of this area, and has no known friends or relatives outside Pennsylvania. She has been subject to home confinement since March 22, 2005. She has had no bail violations, and has appeared at all scheduled court hearings. She has no prior criminal history. There is no allegation that new criminal ac-

tivity has occurred, or that any person or the community has been threatened or harmed.

The Commonwealth's petition requests that bond be set at $200,000. That figure is evidently a standard amount routinely suggested in criminal homicide cases. Here, setting bond at $200,000 would be equivalent to denying bail altogether. There has been no evidence presented to show that the defendant and her family would be able to post such a large amount. Setting bond at $200,000 would be a charade that would only thinly disguise the denial of the defendant's constitutional right to reasonable bail under the Eighth Amendment of the United States Constitution.

This court is not permitted to deny bail because the "proof is evident and the presumption great" that the defendant will be convicted of arson and abuse of a corpse. Bail can only be denied if the "proof is evident and the presumption great" that the defendant will be convicted of first-degree murder and sentenced to life in prison. The reasons set forth in this court's bail bond orders of March 10, 2005 and March 22, 2005, are incorporated herein by reference. Based on the reasons set forth therein, and the record presented to date, this court believes that the bond amount and conditions set on March 22, 2005, are sufficient to "reasonably assure defendant's future appearance." As a result, the Commonwealth's petition for bond revocation must be denied.

## ORDER

And now, September 28, 2005, for the reasons set forth above, it is hereby ordered and directed that the Commonwealth's petition for bond revocation is denied.